WALLACE, Judge.
 

 TID Services, Inc., appeals the circuit court’s order denying its motion to vacate for lack of jurisdiction a default final judg
 
 *2
 
 ment in favor of Tulsie Dass. A sheriffs deputy served TID by leaving a copy of the summons and complaint with the owner of a United Parcel Service (UPS) store where TID maintained a private mailbox. In several annual reports filed with the Florida Department of State before the service of Mr. Dass’s lawsuit, TID had provided the address of the private mailbox as the only address for its officers, directors, and registered agent, and as the address of its principal office and its mailing address. Nevertheless, substitute service on a corporation by serving the person in charge of a private mailbox is not authorized unless the only address for the person to be served, which is discoverable through the public records, is the private mailbox. Because Mr. Dass failed to establish that the
 
 only
 
 address discoverable through the public records for the corporation, its officers, directors, or registered agent was a private mailbox, we reverse the circuit court’s order.
 

 I. THE FACTS
 

 A. Background
 

 In August 2002, Tateram Dinanath incorporated TID as a Florida corporation. Mr. Dinanath named himself as the sole director and the registered agent for TID. The initial registered office of the corporation and the address given for Mr. Dina-nath in the articles of incorporation was an address on Strihal Loop in Winter Garden, Florida. Mr. Dinanath resided at the Stri-hal Loop address with his wife, Indrani Manbahal. In 2003 and 2004, TID’s annual reports filed with the Secretary of State continued to list Mr. Dinanath as the registered agent for the corporation. The 2003 and 2004 annual reports also indicated that Mr. Dinanath was the sole officer and director of the corporation. The only address shown for the corporation and for Mr. Dinanath was the Strihal Loop address.
 

 In January 2005, TID established a private mailbox account, number 211, at a UPS store located on West Colonial Drive in Winter Garden. In TID’s annual report for 2005, Mr. Dinanath changed his address as registered agent, president, and director of the corporation from the Strihal Loop address to the West Colonial Drive address. Afterward, from 2006 through 2008, the only address shown on TID’s annual reports for the corporation and for Mr. Dinanath was the West Colonial Drive address. In 2007, TID’s annual report added Ms. Manbahal as a corporate officer. Like her husband, Mr. Dinanath, the only address shown for Ms. Manbahal was the West Colonial Drive address.
 

 Tulsie Dass, who resides in New Jersey, is Ms. Manbahal’s brother and the brother-in-law of Mr. Dinanath. In January 2006, TID and Mr. Dass jointly acquired title to a citrus grove (or groves) in Polk County. The grove property consists of approximately seventy-seven acres, together with improvements related to grove maintenance. The only address listed on the deed to the property for both TID and Mr. Dass is the West Colonial Drive address.
 

 B. The Lawsuit
 

 On July 17, 2008, approximately two and one-half years after the parties acquired the grove property, Mr. Dass filed an action in the Polk County Circuit Court against TID. In his action, Mr. Dass asserted multiple claims against TID for matters related to the parties’ joint ownership of the grove property. Mr. Dass alleged his claims in an eight-count complaint as follows: Count I, partition and sale of the property; Count II, damages for failure to pay Mr. Dass his share of the profits from fruit sales and for failing to
 
 *3
 
 properly manage the property; Count III, damages for conversion of the profits from fruit sales; Count IV, claims for an accounting, disgorgement of secret profits, and the imposition of a constructive trust; Count V, unjust enrichment; Count VI, quantum meruit; Count VII, damages in the amount of $66,000 for money lent, plus interest; and Count VIII, an action for waste, based on allegations that TID had failed to maintain the grove property. Mr. Dass requested “trial by jury on all issues so triable.”
 

 C. Service of Process
 

 Contemporaneously with the filing of the complaint, the clerk of the court issued a summons with a copy of the complaint attached. Service was to be made on TID in care of Mr. Dinanath as registered agent and president at the West Colonial Drive address. On July 30, 2008, at approximately 10:30 a.m., an Orange County sheriffs deputy went to the UPS store at the West Colonial Drive address in Winter Garden. There, the deputy spoke with Nathan Flashman, the owner and manager of the UPS store.
 
 [1]
 
 Mr. Flashman confirmed for the deputy that TID and Mr. Dinanath maintained a private mailbox at the store and that the private mailbox account was active and in good standing. Based on that information, the deputy delivered the process to Mr. Flashman as the owner and store manager of the UPS store. Mr. Flashman accepted the process and placed it in TID’s private mailbox.
 

 D. TID’s Neglect
 

 The nature and scope of the claims that Mr. Dass asserted against TID were very serious. In addition to the several claims for substantial money damages, the partition claim had the potential to adversely affect TID’s interest in the grove property. So it is reasonable to assume that if TID had obtained actual notice of the filing of Mr. Dass’s complaint, TID would have retained counsel and defended the action. But for reasons unexplained in our record, visits by Mr. Dinanath and Ms. Manbahal to the UPS store on West Colonial Drive to retrieve the contents of the private mailbox were occasional and infrequent. The summons and complaint lay unread in the private mailbox for several months until after a final judgment was entered in the case. Copies of later filings in the case— all mailed to the West Colonial Drive address — suffered the same fate. Indeed, Mr. Dinanath and Ms. Manbahal failed to visit the private mailbox through December 2008, when the circuit court mailed a copy of the final judgment to TID at that address.
 

 E.The Final Judgment
 

 While the summons and complaint lay unread in TID’s private mailbox, Mr. Dass continued to pursue his claims against the corporation. On August 20, 2008, he filed a motion for the entry of clerk’s default based on TID’s failure to file or serve a written response to the complaint within twenty days. The clerk entered the requested default two days later. On December 10, 2008, Mr. Dass filed a “Motion for Final Judgment after Default, or in the Alternative, Motion for Final Summary Judgment.” This motion was accompanied by an affidavit from Mr. Dass and affidavits concerning attorney’s fees. Mr. Dass served a copy of the motion with the supporting affidavits and a notice of hearing by mail on TID in care of Mr. Dinanath as
 
 *4
 
 registered agent and president at the West Colonial Drive address.
 

 On December 12, 2008, after a hearing at which TID was not represented, the circuit court entered a final judgment. In the final judgment, the circuit court found that the grove property, consisting of approximately seventy-seven acres, was “not capable of physical division.”
 
 [2]
 
 Accordingly, the circuit court appointed a special magistrate to take immediate possession of and to sell the property in accordance -with section 64.061(4), Florida Statutes (2008). The circuit court also entered judgment in favor of Mr. Dass and against TID for $429,486.28.
 
 [3]
 
 In the final judgment, the circuit court reserved jurisdiction to apply the proceeds realized from the sale of the grove property to the payment of the sum owed to Mr. Dass. The circuit court sent a copy of the final judgment to TID in care of Mr. Dinanath at the West Colonial Drive address.
 

 F. The Motion to Vacate
 

 While the papers relating to Mr. Dass’s lawsuit continued to accumulate unread in TID’s private mailbox, the court-appointed special magistrate put a “For Sale” sign on the grove property. An inquiry by a real estate broker who saw the “For Sale” sign prompted Mr. Dinanath and Ms. Manbahal to make an investigation that led to their discovery of the filing of the lawsuit and the entry of the final judgment.
 

 On January 20, 2009, TID filed its motion to vacate the final judgment and the clerk’s default. Both Mr. Dinanath and Ms. Manbahal verified the motion under oath. In the motion, TID contended that the final judgment was void because the service of process on TID at the private mailbox was invalid. TID asked the circuit court to vacate the final judgment and the clerk’s default.
 

 G. The Hearing
 

 The circuit court conducted two hearings on TID’s motion to vacate. At the first hearing, the parties presented legal arguments but did not offer any testimony. TID made two arguments pertinent to our discussion.
 
 [4]
 
 First, TID asserted that the service was invalid because another address for the corporation — the Strihal Loop address — was discoverable from the public records. With regard to its first argument, TID relied on copies of two documents from the Polk County public records reflecting the Strihal Loop address for the corporation. Mr. Dass relied on multiple copies of documents from the public records reflecting the West Colonial Drive address, including the property appraiser’s records for the grove property.
 

 In its second argument, TID contended that service of process was invalid because the corporation did not maintain a private mailbox at the UPS store on West Colonial Drive when the service was made. In support of the second argument, Mr. Dina-nath and Ms. Manbahal had sworn in their motion that TID did not maintain a private mailbox at the West Colonial Drive address on July 30, 2008, the date service was made. Other than the sworn motion,
 
 *5
 
 neither of the parties offered any evidence on this critical issue of fact at the hearing. At the conclusion of the first hearing, the circuit court announced that it would continue the hearing on the motion to vacate and reschedule the matter for a second hearing. At the rescheduled hearing, the parties were to present evidence directed to the issue of whether TID maintained a private mailbox at the UPS store on West Colonial Drive when service was made.
 

 Before the second hearing, the parties took the deposition of Nathan Flashman, the owner and manager of the UPS store. In his deposition, Mr. Flashman confirmed that TID had maintained private mailbox number 211 at the UPS store on July 30, 2008, the day service of the process was made. In fact, Mr. Dinanath himself had paid the box rental fee for one year in advance on May 21, 2008, a little over two months before service was made. Before the hearing began, Mr. Dass also filed an affidavit from the Orange County sheriffs deputy who had served the process on Mr. Flashman. The affidavit provided additional details concerning the service. When the hearing reconvened, the parties once again presented their arguments, supplemented by the copies of the documents they had previously filed, the deposition of Mr. Flashman, and the affidavit from the Orange County sheriffs deputy.
 

 H. The Order
 

 After the hearing, the circuit court entered a written order denying the motion to vacate. Relying on Mr. Flashman’s deposition testimony and the May 21, 2008, payment record, the circuit court found: “[TID] was lawfully served at the address provided by it to the State of Florida Secretary of State as the business address of the corporation and its [registered] agent.” Although Ms. Manbahal was present at the second hearing as the corporate representative of TID, she did not explain the inaccurate statement contained in TID’s verified motion that it did not maintain a private mailbox at the UPS store when service was made. It may have been the absence of any explanation that prompted the circuit court to write in its order that it was “gravely concerned with the untruthful nature of the factual assertion in the [] motion to vacate that TID Services, Inc., has not maintained a mailbox at the UPS store located at the service location since 2006.” Indeed, the circuit court viewed the inaccurate statement in the verified motion so seriously that it referred the matter to the Office of the State Attorney of the Tenth Judicial Circuit for further consideration.
 
 [5]
 

 II. DISCUSSION
 

 In Florida, domestic corporations and foreign corporations qualified to do business in the state are required to designate a registered agent and a registered office. §§ 48.091, 607.0501, 607.1507, Fla. Stat. (2008). The statutory requirements relative to keeping the office open are explicit, but not particularly burdensome:
 
 *6
 
 § 48.091(2). The purpose of keeping the registered office open and having the registered agent on the premises for at least two hours on every business day is to provide an alternative to service of process on the corporate officers. The statutory requirements contemplate a physical address at which service of process may be made on the registered agent. Thus supplying a post office box address does not meet the statutory requirements relative to designating a registered office.
 
 See Radiation, Inc. v. Magnetic Sys. Corp.,
 
 173 So.2d 741, 742 (Fla. 2d DCA 1965).
 

 
 *5
 
 Every corporation shall keep the registered office open from 10 a.m. to 12 noon each day except Saturdays, Sundays, and legal holidays, and shall keep one or more registered agents on whom process may be served at the office during these hours. The corporation shall keep a sign posted in the office in some conspicuous place designating the name of the corporation and the name of its registered agent on whom process may be served.
 

 
 *6
 
 Designating a private mailbox as the address for the corporation’s registered office causes a problem similar to the designation of a post office box address. But the problem posed by the designation of the private mailbox address is more subtle. The registered agent is no more likely to be found at a private mailbox than at a post office box, but the private mailbox address generally gives the appearance— at least on paper — of a physical address for the registered office.
 

 In 2004, the Florida Legislature addressed the problem posed by the designation of private mailboxes as the registered office for corporations with two amendments to chapter 48 of the Florida Statutes. First, the legislature added subsection (b) to section 48.081(3) as follows:
 

 If the address provided for the registered agent, officer, director, or principal place of business is a residence or private mailbox, service on the corporation may be made by serving the registered agent, officer, or director in accordance with s. 48.031.
 

 Ch. 2004-273, § 2, at 1656, Laws of Fla. Second, the legislature added subsection (6) to section 48.031, as follows:
 

 If the only address for a person to be served, which is discoverable through public records, is a private mailbox, substitute service may be made by leaving a copy of the process with the person in charge of the private mailbox, but only if the process server determines that the person to be served maintains a mailbox at that location.
 

 Ch. 2004-273, § 1, at 1656, Laws of Fla. The enactment of these two amendments appears to have been intended to avoid the situation in which a corporation could — by listing a private mailbox — feign compliance with the statutory requirement but evade service of process by concealing the physical whereabouts of its registered agent, officers, directors, and place of business.
 
 Cf. Montesdeoca v. Krams,
 
 194 Misc.2d 620, 755 N.Y.S.2d 581, 582-83 (N.Y.Civ.Ct. 2003) (observing that if service of process at a private mailbox could never be good service, “then a person bent upon thwarting service, creditors, and other legitimate means of communication, could always hide behind the shield of a private mailbox”). Although the legislature did not provide a definition of the term “private mailbox,”
 
 [6]
 
 we conclude that this term certainly includes a private mailbox service provided by a commercial mail receiving agency such as the UPS store in this case.
 

 But the statutory amendments do not give claimants carte blanche to make service of process on corporations at private mailbox addresses. On the contrary, delivery of process to a person in charge of a private mailbox will be invalid unless the claimant can establish strict compliance with the statutory requirements:
 

 
 *7
 
 In order to perfect service of process on [a] corporation by serving the person in charge of a mailbox store, Plaintiff must establish that certain conditions exist. Plaintiff must show (1) that the address of record of the corporation’s officers, directors, registered agent and principal place of business was a private mailbox, (2) that the only address discoverable through public records for the corporation, its officers, directors, or registered agent was a private mailbox, and (3) that the process server properly determined that the corporation, or its officer, director, or registered agent maintains a mailbox at that location pri- or to serving the person in charge.
 

 Cruz v. Petty Transp., LLC,
 
 No. 6:08-cv-498-Orl-22KRS, 2008 WL 4059828, at *1 (M.D.Fla. Aug.27, 2008);
 
 see also Clauro Enters., Inc. v. Aragon Galiano Holdings, LLC,
 
 16 So.3d 1009, 1012 (Fla. 3d DCA 2009) (outlining the conditions under which service at a private mailbox under section 48.031(6) is permitted).
 

 Here, Mr. Dass satisfied the first and third requirements for service at the private mailbox outlined in the
 
 Cruz
 
 ease. The address of record for TID’s officers, directors, registered agent, and the principal place of business was the private mailbox address on West Colonial Drive. And the process server confirmed that TID maintained a private mailbox at the location before leaving the process with the owner of the UPS store. TID’s claim that it did not have a private mailbox at the UPS store was shown to be without any basis in fact.
 

 But Mr. Dass did not demonstrate compliance with the second requirement for service at the private mailbox. He failed to show that the
 
 only
 
 address discoverable through the public records for the corporation, its officers, directors, or registered agent was a private mailbox. It appears that the inaccurate statements in TID’s motion to vacate concerning whether it maintained a private mailbox at the West Colonial Drive address on the date service was made apparently caused the circuit court to focus on the third requirement to the exclusion of the second. The circuit court did not address the second requirement in its order. We certainly do not condone the inaccurate assertions of fact made in TID’s sworn motion. But any inaccurate statements made by TID relative to the third requirement did not excuse Mr. Dass from carrying his burden of establishing compliance with the second requirement. We turn now to an examination of the evidence pertinent to this issue.
 

 Unfortunately, neither of the parties assisted the circuit court by presenting any testimony relative to the second requirement. Such testimony could have been provided relatively easily by a person who had made a search of the public records concerning the address or addresses on record for the corporation. TID did attach to its motion copies of two documents demonstrating that the Strihal Loop address was discoverable from the public records of Polk County. The first document reflecting the Strihal Loop address for TID was a billing record from the tax collector’s office for the 2007 tangible personal property taxes assessed against the personal property located at the grove property.
 
 [7]
 
 The second document was a 2008 record maintained by the property appraiser’s office for a different parcel of real estate that TID owned jointly with another entity. Although no one elaborated on the significance of these documents at the hearing, Mr. Dass did not challenge their authenticity or explain why reference to these documents in the public record
 
 *8
 
 would not have disclosed the Strihal Loop address as another address for TID. Thus service at the private mailbox was not an appropriate method of substitute service on TID because Mr. Dass failed to prove that the only address for TID, which was discoverable through public records, was a private mailbox.
 
 See Beckley v. Best Restorations, Inc.,
 
 18 So.3d 125, 126 (Fla. 4th DCA 2009). It follows that the circuit court erred in denying TID’s motion to vacate.
 

 III. CONCLUSION
 

 This case highlights some of the problems posed for litigants and lawyers by the widespread use of private mailboxes. Persons who designate a private mailbox as the registered office for a corporation or as a receptacle for the receipt of important papers should check the mailbox regularly. Those who fail to check their mailbox may remain ignorant of legal proceedings that may adversely affect them. For claimants, it is important to ensure that the statutory requirements have been met before attempting service of process at a private mailbox. The failure to do so may result, as here, in a declaration that the service is invalid.
 

 For the reasons outlined above, we reverse the order denying TID’s motion to vacate. We remand this case to the circuit court with directions to vacate the final judgment and the clerk’s default and for further proceedings consistent with this opinion.
 

 Reversed and remanded with directions.
 

 KELLY and BLACK, JJ„ Concur.
 

 [1]
 

 . A corporation apparently owned the UPS store. Mr. Flashman owned the corporation and served as its registered agent.
 

 [2]
 

 . The circuit court apparently made this finding based on an uncontested allegation to that effect in Mr. Dass’s verified complaint. The circuit court did not appoint commissioners in accordance with section 64.061(1), Florida Statutes (2008).
 

 [3]
 

 . The figure of $429,486.28 was comprised of the following amounts: (1) money lent, $66,000; interest on the money lent at seven percent, $13,037.26; waste to the property, $89,610; ownership interest in harvested crop, $255,000; attorney's fees, $5509.02; and $330 costs.
 

 [4]
 

 .Based on our disposition of the case, we need not address TID’s other arguments.
 

 [5]
 

 . We note that TID's appellate counsel did not represent TID in the circuit court and were not involved in the preparation of the motion to vacate.
 

 [6]
 

 . The omission to provide a definition of this term prompted one well-known commentator on Florida civil practice to ask, "What is a private mailbox?” Henry P. Trawick, Jr.,
 
 Florida Practice and Procedure
 
 § 8:6 n. 10 (2010 ed.).
 

 [7]
 

 . We speculate that this personal property was used for grove maintenance.